5 F.3d 547
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Ty Lane PETERSON, Plaintiff-Appellant,
and
Marjorie Reed, Plaintiff,
v.
CITY OF BROKEN ARROW, and Danny David, Defendants-Appellees.
 No. 92-5226.
 United States Court of Appeals, Tenth Circuit.
 Aug. 27, 1993.
 
 1
 Before SEYMOUR and TACHA, Circuit Judges, and ROGERS,** Senior District Judge.
 
 ORDER AND JUDGMENT[1]
 
 2
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 3
 Plaintiff-appellant Ty Lane Peterson (plaintiff) appeals the district court's decision granting defendants' summary judgment motions. This litigation stems from plaintiff's confrontation with and arrest by defendant Danny David, a Broken Arrow police officer (the officer). Plaintiff alleged four causes of action against both the officer and the City of Broken Arrow (the City): 1)the officer's warrantless entry into plaintiff's mother's apartment was effected pursuant to a policy and custom of the City and in violation of plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures; 2)the officer, acting pursuant to a policy and custom of the City, used excessive force in arresting plaintiff; 3)both the officer and the City were liable under Oklahoma tort law for malicious prosecution based upon the charge of driving while under the influence of alcohol filed against plaintiff; 4)both the City and the officer were liable under Oklahoma tort law for trespass and malicious destruction of property as a result of the officer's forced entry into plaintiff's mother's apartment.
 
 
 4
 This court reviews a summary judgment decision de novo, viewing the record in the light most favorable to the nonmoving party. Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment is appropriate only if there are no genuinely disputed factual issues and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).
 
 
 5
 We note initially that the district court addressed the merits of plaintiff's state law causes of action for trespass and malicious destruction of property. Nonetheless, because plaintiff has failed to allege that he had a property interest in his mother's apartment, he lacks standing to assert these causes of action. We, therefore, affirm the district court's denial of relief on those state law claims on that basis. See Griess v. Colorado, 841 F.2d 1042, 1047 (10th Cir.1988)(appellate court may affirm district court's decision on ground supported by the record, but upon which district court did not rely). Further, upon consideration of the record and the parties' arguments on appeal, we affirm the district court's decision addressing the remainder of plaintiff's claims for substantially the reasons stated in that court's order dated November 5, 1992.
 
 
 6
 The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED.
 
 
 7
 SEYMOUR, Circuit Judge, dissenting.
 
 
 8
 I agree that Mr. Peterson lacks standing to assert state law causes of action for trespass and malicious destruction of property and has failed to allege sufficient facts on his malicious prosecution claim. Based upon my review of the record, however, I am persuaded that there is a fact question which precludes summary judgment on the Fourth Amendment issues. I therefore respectfully dissent.
 
 
 9
 Mr. Peterson contends that Officer David violated clearly established law by executing a warrantless search in his home to effect an arrest for misdemeanor traffic violations. Officer David argues that he believed more serious crimes were occurring and that exigent circumstances existed which justified the search. Therefore, he says his actions were objectively reasonable. In a summary judgment based upon qualified immunity, "the defendant must demonstrate that no material issues of fact remain as to whether his or her actions were objectively reasonable in light of the law and the information he or she possessed at the time." Coen v. Runner, 854 F.2d 374, 377 (10th Cir.1988). "A defendant who makes such a showing of objective reasonableness is entitled to summary judgment unless the plaintiff can demonstrate that there are factual disputes relevant to the defendant's claim to immunity." Id. See also Langley v. Adams County, 987 F.2d 1473 (10th Cir.1993) (fact issues preclude summary judgment on qualified immunity); Salmon v. Schwarz, 948 F.2d 1131 (10th Cir.1991) (same); Austin v. Hamilton, 945 F.2d 1155 (10th Cir.1991) (same); Archer v. Sanchez, 933 F.2d 1526 (10th Cir.1991) (same); Zuchel v. Spinharney, 890 F.2d 273 (10th Cir.1989) (same).
 
 
 10
 While it is true that "objective reasonableness" must be based upon the facts known to the officer at the time, Anderson v. Creighton, 483 U.S. 635, 641 (1987), we must review a summary judgment decision in the light most favorable to the non-moving party. Frohmader v. Wayne, 958 F.2d 1024, 1026 (10th Cir.1992) (per curiam). In my judgment, the deposition testimony clearly establishes a dispute over the facts known to Officer David at the time he entered the apartment.
 
 
 11
 The district court concluded that exigent circumstances existed based on "a fleeing suspect entering an apartment, followed by screams within." Dist. Ct. Order at 11. The district court therefore held that Officer David's conduct was "objectively reasonable in light of the undisputed material facts herein," Dist. Ct. Order at 12, and granted the officer's motion for qualified immunity. If, however, Officer David entered the home to arrest Mr. Peterson for a civil traffic offense, his conduct was not objectively reasonable and was in violation of clearly established law. Welsh v. Wisconsin, 466 U.S. 740, 754-55 (1984) (warrantless nighttime entry into a private residence to arrest an individual for civil traffic offense prohibited by the Fourth Amendment).[2] I believe Mr. Peterson has demonstrated "factual disputes relevant to the defendant's claim to immunity," Coen, 854 F.2d at 377, specifically as to the reasons why Officer David entered the home.
 
 
 12
 Although the district court's decision was allegedly based on "undisputed facts", the "facts" as described by the court are actually defendant's version of disputed facts. According to Officer David and the district court, after the officer chased Mr. Peterson to the apartment building parking lot, Mr. Peterson got out of the car and began to run. David Dep. at 47. The district court said: "The suspect entered the apartment, apparently not using a key, closed the door in Officer David's face and bolted the door, knowing that it was a police officer who was behind him...." Dist. Ct. Order at 3. Officer David's police report said:
 
 
 13
 The suspect shut the door in my face just a second before I could block it. I yelled for him to open the door and that I was a police officer. I shouldered the door and it gave a little and then the suspect forced it back closed. I heard the door lock. I yelled that I would force the door if the suspect refused to open it. I then heard a female voice scream from inside. Police Report, Plaintiffs' Ex. 2 (emphasis added).[3]
 
 
 14
 The rationale Officer David offered subsequently for breaking down the door was that he didn't see Peterson use his keys to open the door and he heard a woman screaming and feared for her safety. However, Officer David's own version of the facts in the police report quoted above indicates that he attempted to enter the apartment prior to any concern for the safety of the occupants of the apartment. The police report also reflects Officer David's statement that a "female said 'stop, what are you doing.' " The voice came from the back of the apartment." Police Report, Plaintiffs' Ex. 2. Officer David testified in his deposition that he pounded on the door and "yelled at the lady to come and open the door. I was trying to get her attention." David Dep. at 58. He testified that he never heard any statements to him from Ms. Reed. Id. at 58, 67.
 
 
 15
 Contrary to Officer David's testimony and the district court's recitation of "undisputed" facts, Mr. Peterson testified that he unlocked two locks on the door with his key. Peterson Dep. at 30. Once he entered the apartment, he ran to the back bedroom. Ms. Reed testified she woke up when she heard a pounding on the door. She thought it might be her son, who was out for the evening and might have forgotten his key. Reed Dep. at 35. "So I rushed to the door and I said 'Wait a minute, I'll open the door for you.' And somebody on the other side of the door was kicking at the door. And I said, 'Stop.' " Id. Ms. Reed testified that "I know they could hear me because there is--I mean, I got right up to the door; and the apartment doors always have a big crack around them." Id. After she heard someone tell her to stand back, Officer David kicked the door in. Ms. Reed stated that she did not see her son until the physical struggle began in her bedroom. Id. at 39.
 
 
 16
 This testimony clearly establishes a dispute as to what occurred after Officer David pounded on the door. The evidence from the police report, that the officer attempted to push the door open with his shoulder, coupled with Ms. Reed's testimony that she was telling Officer Reed through the door to wait a minute, would permit a fact finder to determine that Officer Reed was not concerned with a woman's safety but was determined to arrest a drunken man who ran rather than obey an order to halt. I would hold that summary judgment is not appropriate on the issue of unlawful entry and unlawful arrest because there are disputed fact questions as to the objective reasonableness of the police officer. As in Zuchel, 890 F.2d at 275, summary judgment for Officer David is only appropriate if we believe his version of the facts. See also Salmon, 948 F.2d at 1139 ("We are convinced that the record shows a genuine factual issue that undermines any claim of objective reasonableness to support a qualified immunity summary judgment.").
 
 
 17
 The district court also found that Mr. Peterson failed to present significant probative evidence demonstrating a policy or custom of the City of Broken Arrow. Dist. Ct. Order at 15. I have explained above my belief that Mr. Peterson has alleged sufficient disputed facts of an unlawful entry by Officer David. I am also persuaded that Mr. Peterson has produced enough evidence of a City policy to preclude summary judgment on that claim. The police chief testified that he believed it would have been lawful for Officer David to enter the apartment in order to arrest Mr. Peterson even if there had been no screaming from within. Stover Dep. at 19-21. Defendants argue that this testimony does not address the actual circumstances surrounding Officer David's entry and it is therefore inappropriate to rely upon this testimony as proof of an unconstitutional City policy.
 
 
 18
 As I have noted above, however, there is a fact question as to the actual circumstances surrounding Officer David's entry. If a jury were to believe the version of events as described by Mr. Peterson and Ms. Reed, then the police chief may have testified to the actual circumstances. Further, under our case law, the police chief's testimony is sufficient evidence for a jury to find that the City had a policy authorizing illegal entries. See Ross v. Neff, 905 F.2d 1349, 1355 (10th Cir.1990) (sheriff's testimony he believed arrests were legal held sufficient to permit jury to find custom or policy). Consequently, summary judgment should not have been granted to the City on this issue.
 
 
 19
 Mr. Peterson's claim against Officer David for excessive force also raises factual disputes. In determining whether Officer David's actions were objectively reasonable, Graham v. Connor, 490 U.S. 386, 399 (1989), we must consider the severity of the crime at issue, the threat to the safety, and whether Mr. Peterson was attempting to evade arrest. Id. at 396. As with the unlawful entry claim, we must determine the reasonableness of Officer David's conduct in light of the facts and circumstances confronting him at the time. Id. at 397.
 
 
 20
 While the record is clear that Mr. Peterson was attempting to evade arrest, it is not clear as to the facts and circumstances confronting Officer David, specifically the severity of the crime at issue. Due to these factual disputes, I do not believe we can determine on summary judgment that Officer David's actions were objectively reasonable. I would therefore reverse the district court on the Fourth Amendment issues.
 
 
 
 **
 Honorable Richard D. Rogers, United States District Judge for the District of Kansas, sitting by designation
 
 
 [1]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir. R. 36.3
 
 
 [2]
 At the time, Mr. Peterson stopped at the apartment, Officer David believed Peterson had committed four misdemeanors: speeding, reckless driving, improper left turn, and improper parking. David Dep. at 56-57
 
 
 [3]
 Office David testified to the contrary in his deposition, stating there that he heard a woman screaming as soon as the suspect entered the apartment. David Dep. at 65